Filed 9/9/25  P. v. Romero-Guzman CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JAIRO NICOLAS ROMERO-GUZMAN,<br><br>    Defendant and Appellant. | A171306<br><br>(San Mateo County<br>Super. Ct. No. 22SF002121A) |

After a jury convicted defendant Jairo Nicolas Romero-Guzman of one count of being a felon in possession of ammunition (Pen. Code, § 30305, subd. (a)(1)),[1] the trial court sentenced him to the midterm of two years. Defendant appealed contending the trial court erred in declining to sentence him to the lower term pursuant to section 1170, subdivision (b)(6).  This court reversed and remanded for resentencing to allow the trial court to exercise its discretion under section 1170, subdivision (b)(6).  On remand, the trial court again sentenced defendant to the midterm of two years.  Defendant appeals, contending the trial court once again failed to sentence him in accordance with section 1170.  We affirm.

---

[1]  All further statutory references are to the Penal Code unless otherwise indicated.

1

"The San Mateo District Attorney filed an information charging defendant with one count of possession of ammunition by a felon, a felony (§ 30305, subd. (a)(1)) and alleging defendant had sustained several prior felony convictions (§ 1203, subd. (e)(4)).[2]

"At trial, San Mateo County Deputy Sheriff Joseph Venikov testified that while he was patrolling in his car around 1:00 a.m., he saw defendant walking down El Camino Real in San Carlos. Venikov did not see defendant 'doing anything wrong' but recognized him from 'previous contacts.' Venikov pulled over and 'engaged in conversation' with defendant. During this conversation, Venikov asked defendant if he had 'anything illegal on his person.' Defendant said he had bullets in his pocket, so Venikov asked if he 'would consent to a search.' Defendant agreed, and Venikov found 10 loose, .45-caliber hollow point bullets in defendant's right pocket. The rounds appeared to be 'in working order, did not appear to be fired, intact,' meaning the 'bullet itself was not detached from the shell casing.' Venikov did not find any ammunition or firearms in defendant's backpack.

"Defendant testified that as he was walking down El Camino Real, he 'found some ammunition' '[r]ight on the sidewalk,' about a block away from where he encountered Deputy Venikov. He picked up the 'hollow tip' bullets and put them in his pocket so that 'little kids couldn't play with them.' He planned on throwing the ammunition away, but he had not yet found a trash can when he encountered Venikov. The deputy did not ask if he had 'anything illegal' on him. Rather, defendant, 'unprompted' and voluntarily,

---

2 We take judicial notice of, and quote from, our prior opinion (*People v. Romero-Guzman* (Mar. 6, 2024, A166209) [nonpub. opn.]). (Evid. Code, §§ 452, subd. (a), 459.)

2

told Venikov he had the bullets in his pocket so Venikov 'could throw them away.'

"The jury found defendant guilty of the charged offense, defendant admitted the prior convictions, and the trial court sentenced him to the midterm of two years." (*People v. Romero-Guzman, supra*, A166209.)

### *Sentencing*

Before sentencing, the trial court considered defendant's sentencing memorandum, a report by a social worker who had twice interviewed defendant, the probation report, and the prosecution's sentencing memorandum.

"Defendant's sentencing memorandum requested the court reduce the felony conviction to a misdemeanor or to 'grant the mitigated' term of 16 months. At no point did defendant expressly claim a presumptive lower term was warranted pursuant to section 1170, subdivision (b)(6). However, defendant argued granting the mitigated term was 'appropriate given [his] extensive mental illness and the link between that illness and his actions in this case.' He cited to a social worker report attached to the memorandum, which 'discussed extensively' defendant's 'untreated childhood and adulthood traumas compounded by self-medication through illicit drugs'; that defendant reported 'hearing voices daily and having auditory and visual hallucinations'; that defendant had stated he had told the 'Sherriff Deputy that he believed the bullets were "bewitched" and thus dangerous to children' and 'repeatedly made references to "demonic spirits" interacting with these bullets' indicating defendant's actions were 'driven by his mental health disorder'[3]; and the

---

[3] "Defendant stated in his memorandum that he had 'made a series of strange statements indicating his belief that the bullets were bewitched. [¶] "Yes sir, on the sidewalk and I picked it up because um it might have had something it might have been bewitched or something and a kind of position,

3

social worker's belief that defendant 'likely suffers from undiagnosed schizophrenia.' " (*People v. Romero-Guzman, supra*, A166209.)

In the interviews with the social worker, defendant reported "adverse childhood experiences," including physical, emotional, and mental abuse by his father; assault by a cousin; emotional abuse by his mother; experiencing homelessness; gang association; and mental health issues, including threats of self-harm. He also reported he had been diagnosed with depression, although he could not recall "who diagnosed him or where he was diagnosed." He reported he "often talks to God," that he has "seen God and orbit like visuals," and that he suffers from "auditory and visual hallucinations, delusion ideation, and paranoia." The social worker opined these symptoms "align with an individual who would be diagnosed with schizophrenia." The fact that defendant's mental health problems "worsened after his methamphetamine use," suggested his "psychotic disorder may have occurred secondary to, or at least exacerbated by his substance use." However, the social worker noted defendant did not report any diagnosis of schizophrenia.

Finally, defendant reported "an extensive history of substance use." Defendant participated in outpatient services for drug and alcohol treatment in 2008, 2010, 2013, and 2014, however, he reported he had been "unsuccessful maintaining his sobriety because he wanted to continue to be involved in the lifestyle and was not willing to stop using substances at these particular times in his life."

---

so excuse me, I had to contact our demonic spirits and help me defuse this so I wouldn't destroy anything of the ground so, witching me hell of bad, like, you know, I had to contact demonic spirits, to defuse these, so I can pick them up and put them in my pocket and throw them away." ' " (*People v. Romero-Guzman, supra*, A166209.)

4

The probation department recommended denial of probation and a prison sentence. In its report, the department noted defendant's criminal history dated back to when he was 18 years old and included 13 convictions for various offenses and two prison sentences. Additionally, he continually violated his most recent parole, which was eventually terminated in 2017.

During the interview with the probation officer, defendant "denied any sort of substance abuse," "denied ever suffering from a mental health issue," and "denied any prior or current gang affiliations," instead presenting "himself as a law-abiding person with good intentions." When the probation officer noted this was in direct contrast to information contained in a prior probation report, where defendant "reported he had a history of substance abuse, mental health diagnosis, and gang association," defendant "denied ever suffering any sort of mental health condition and indicated he could not recall being prescribed any medication."

In regard to his family background, defendant reported his parents had divorced when he was nine years old, but declined to speak on the matter, stating "his parents' relationship issues did not concern him." He denied "suffering from any type of abuse during his childhood." Defendant also denied any substance abuse or treatment history, only admitting to twice drinking alcohol. When confronted with his past "arrests for possession of a controlled substance," defendant "admitted he was in possession of methamphetamine" but denied he had used the drug. He also then admitted he had "used cocaine and ecstasy regularly since the age of 15" and that he had completed "18 months of [an] outpatient substance abuse treatment program." When asked about his present offense, he again reiterated—as he did in trial—that he picked up the bullets so kids would not pick them up and play with them, and that he was planning to throw them away. He did not

5

mention anything about "demonic" spirits or that the bullets were "bewitched."

The probation department concluded that under California Rules of Court, rule 4.423 there were no mitigating circumstances."[4]

"The People's sentencing memorandum urged the court to impose the midterm of two years.  The memorandum did not address any factors in mitigation or address any of the claims of mental illness or trauma.  Rather, the People stated defendant was ineligible for probation based on section 1203, subdivision (e)(4).[5]

"At the sentencing hearing, defense counsel informed the court defendant was 'prepared to explore treatment options.'  Counsel reiterated defendant was 'having delusions about these bullets, being bewitched, and that [someone] was telling him to pick them up,' and he 'has underlying issues of schizophrenia.'  Counsel then stated defendant's mother was in court and 'can talk a little bit more.'  The trial court responded, 'I don't need any further information,' and defense counsel submitted.

"The prosecutor submitted on the papers.

---

[4] Mitigating factors include, among other things, that "defendant was suffering from a mental or physical condition that significantly reduced culpability for the crime" or "defendant experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence and it was a factor in the commission of the crime."  (Cal. Rules of Court, rule 4.423(b)(2)—(3).)

[5] "Section 1203, subdivision (e)(4) provides, 'Except in unusual cases in which the interests of justice would best be served if the person is granted probation, probation shall not be granted' to 'Any person who has been previously convicted twice in this state of a felony or in any other place of a public offense which, if committed in this state, would have been punishable as a felony.' " (*People v. Romero-Guzman, supra*, A166209.)

6

"The court began by stating defendant had a lack of positive history of probation and 'did not seem to take [his] interview with the probation officer . . . seriously.' The court noted 'the stark contrast between the information that you provided to the probation officer as opposed to what you provided to . . . [the] social worker. [¶] . . . [¶] They cannot be reconciled. And what it reflects upon is your inability to tell the truth.' The court continued, that defendant had been 'consistently dishonest with the probation officer,' pointing to, for example, that defendant 'denied any substance abuse history at all, which is remarkable because you also acknowledge that you have previously completed . . . a substance abuse treatment program.'

"Additionally, defendant's 'criminal history is replete with continued violations of the law. It's pretty amazing. While I'm here to sentence you on a felony, you have five or six pending open cases because rehabilitation hasn't worked with you thus far.' The court, citing section 1203, subdivision (e)(4), then stated barring unusual circumstances, not present in this case, defendant was not eligible for probation and sentenced him to the midterm of two years. In making its sentencing determination, the court made no reference to section 1170, subdivision (b)(6).' " (*People v. Romero-Guzman, supra*, A166209.)

In reversing, this court expressed no view as to how the trial court should exercise its discretion but remanded to allow for development of the record as to whether any of section 1170, subdivision (b)(6) factors contributed to the offense, and if so, whether the midterm should be imposed in the interests of justice. (*People v. Romero-Guzman, supra*, A166209.)

At the sentencing hearing after remand, the trial court heard from counsel. Defense counsel once again requested the 16-month low term in light of the "mitigation provided to the Court." The prosecution opposed

7

citing defendant's "extensive criminal history, the lack of any mitigating circumstances, as well as a lack of taking accountability for his actions based on the probation report that was produced in relation to this case."

The court resentenced defendant to the midterm of two years. In doing so, and in exercising its "discretion under the recently amended [section] 1170(b) provisions," the court stated it was "considering" whether there is "sufficient credible evidence before the Court to determine that either childhood trauma of the defendant or any mental illness was somehow a contributing factor in his criminal offense?" The court concluded neither "played any factor."

The court pointed out defendant had testified at trial that he possessed the ammunition because he "wanted to dispose of it because he was concerned for the welfare of the children in the neighborhood," and this testimony was "rejected by the jury." There was "nothing about the very simple underlying facts of this case that suggest in any way mental illness, if it existed, played any factor, let alone a contributing factor." The court rejected "in its entirety any recitation" by defendant "that somehow witchcraft had enveloped the inanimate objects that were the ammunition in this case," or that childhood trauma was a contributing factor.[6]

_____

[6] At the beginning of the sentencing hearing, defense counsel noted defendant had served his two-year term in this case but that he was "in custody on a matter out of San Francisco and on a parole violation on this case." After the trial court sentenced him to the midterm of two years, the court stated "[a]ll the original terms and conditions shall remain in effect. It appears that he's served that term." In his reply brief, defendant states the "outcome of this appeal will have no concrete effect on [his] life, insofar as he already served his middle term sentence," rather the "importance" of this appeal "lies in advancing judicial understanding of the nature and scope of analysis required of trial courts." " ' "[W]hen, pending an appeal from the judgment of a lower court, and without any fault of the [opposing party], an

8

We review the sentencing court's choice of term for abuse of discretion. (*People v. Panozo* (2021) 59 Cal.App.5th 825, 837.)  "To prove an abuse of discretion, ' "[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary.  [Citation.]  In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." ' [Citation.] To meet this burden, the defendant must 'affirmatively demonstrate that the trial court misunderstood its sentencing discretion.' " (*People v. Lee* (2017) 16 Cal.App.5th 861, 866.)

Section 1170, subdivision (b)(6) provides in relevant part, "[U]nless the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of the lower term if any of the following was a contributing factor in the commission of the offense: [¶] (A) The person has experienced psychological, physical, or childhood

---

event occurs which renders it impossible for this court, if it should decide the case in favor of [defendant], to grant him any effectual relief whatever, the court will not proceed to a formal judgment, but will dismiss the appeal" ' as moot." (*People v. DeLeon* (2017) 3 Cal.5th 640, 645; *id.* at pp. 645–646 [concluding appeal moot where the defendant completed jail term and parole supervision had ended but nevertheless exercising discretion to decide issue on review where it was " 'likely to recur' " and might otherwise evade review and was of " 'continuing public interest' "].)  Here, although defendant's statements in his reply suggest little relief will be obtained, we nevertheless decide the case because it is not clear from the record before us that defendant has been released from his parole supervision.  (*People v. Valencia* (2014) 226 Cal.App.4th 326, 329 [service of entire term does not moot an appeal that may affect duration of probation or parole].)

trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence."  (§ 1170, subd. (b)(6)(A).)

Defendant asserts the trial court once again failed to consider evidence of his history of childhood trauma and mental illness.  He contends the record is replete with evidence he suffered childhood trauma and from mental illness and the "link between those matters and his actions in this case were highlighted in his sentencing memorandum" and attached social worker's social history report.

To begin with, we clarify that the issue is whether defendant suffered a *psychological trauma* at the time he committed the offense, not whether he had a mental illness.  (*People v. Banner* (2022) 77 Cal.App.5th 226, 241, ["[P]yschological trauma based on mental illness may be a circumstance qualifying for the lower term presumption in section 1170, subdivision (b)(6). To be clear, we do not hold mental illness alone qualifies for the lower term presumption.  Psychological trauma must attend the illness, and *that* trauma must contribute to the crime under section 1170, subdivision (b)(6)."].)  Thus, to the extent defendant alleges his mental illness, if any, alone triggered the lower term presumption under section 1170, he is incorrect.

Next, the record is far from clear that defendant suffered from a mental illness, let alone psychological trauma stemming from mental illness.  There is no evidence in the record, beyond defendant's contradictory self-reports, that he suffered such illness.  And, although the social worker opined defendant's self-reported symptoms "align[ed] with an individual who would be diagnosed with schizophrenia," she went on to note defendant never indicated he had been diagnosed with any mental illness.  Defendant, himself, also denied any mental illness in one of his interviews with the probation department.  And when confronted with the fact he had previously

10

reported a diagnosis of mental health issues, he "denied ever suffering from any sort of mental health condition and indicated he could not recall being prescribed any medication." Based on this aspect of the record, alone, the trial court's exercise of its discretion withstands challenge.

Moreover, even assuming defendant did suffer from a mental illness and further assuming there was psychological trauma based on that mental illness, there is nothing in the record that links that trauma to the crime beyond defendant's contradictory statements, which the court expressly rejected. (See *People v. Ochoa* (1993) 6 Cal.4th 1199, 1206 [trial court, not appellate court, makes credibility determinations].) "[T]he mere fact a defendant . . . has suffered a past trauma is insufficient," the trauma "must be 'a contributing factor in the commission of the offense' for the low term to apply." (*People v. Knowles* (2024) 105 Cal.App.5th 757, 765; *People v. Bravo* (2025) 107 Cal.App.5th 1144, 1158.) In short, it was within the province of the trial court to find there was no credible evidence of linkage between any past trauma and the crime.

Defendant contends nothing in section 1170, subdivision (b)(6) "authorizes a superior court to only consider trial evidence in assessing whether a defendant's childhood trauma and/or mental illness were contributing factors in his commission of a crime," and here the record "does not show the resentencing court as having paid any attention whatsoever to the detailed social history that a licensed social worker had prepared for [his] initial sentencing." (Underlining omitted.) He further contends the trial court made "no reference whatsoever to the abundant evidence of intense childhood trauma."

To begin with, the record does not support the assertion the trial court *only* considered defendant's trial testimony. Rather, the record shows the

11

court's attempt to reconcile the many contradictory statements defendant made throughout the proceedings. Further, the court stated on the record that it reviewed not only defendant's trial testimony, but also defendant's sentencing memorandum and the probation report. Just because the court did not also specifically mention the social worker's report which was attached to the defendant's sentencing memorandum, does not mean the court did not consider it, and in the absence of evidence to the contrary, we will not presume otherwise. (*People v. Bravo, supra,* 107 Cal.App.5th at p. 1158 [" 'we presume that the trial court knew the law and followed it' "], citing *People v. Knowles, supra*, 105 Cal.App.5th at pp. 768–769 [rejecting claim sentencing court failed to consider mitigating evidence because it did not mention all the evidence]; *People v. Jones* (2022) 86 Cal.App.5th 1076, 1092 ["fact that a court did not specifically mention certain evidence not mean that the court 'ignored' that evidence"]; Cal. Rules of Court, rule 4.409 [we presume trial court considered all relevant factors "unless the record affirmatively reflects otherwise"].) In any case, the social worker's report, which was attached to defendant's sentencing memorandum and referenced therein, did not provide any evidence linking any psychological trauma based on mental illness, or childhood trauma, to the offense; indeed, the report does not go into any detail about his offense.

Section 1170, subdivision (b)(6)'s lower term presumption applies only if "one of the enumerated circumstances 'was a contributing factor in the commission of the offense' " and the "court does not find aggravating circumstances outweigh 'the mitigating circumstances that imposition of the lower term would be contrary to justice.' " (*People v. Achane* (2023) 92 Cal.App.5th 1037, 1044.) "A trial court's decision whether to apply this provision thus depends on both factual determinations and the exercise of its

12

discretion." (*Ibid.*)  There being no error in the trial court's determination that none of the factors listed in section 1170, subdivision (b)(6) were contributing factors to the offense, the trial court did not abuse its discretion in sentencing defendant to the midterm of two years.

## DISPOSITION

The judgment is affirmed.

_____

Banke, J.


We concur:


_____

Humes, P.J.


_____

Langhorne Wilson, J.


A171306, People v. Romero-Guzman